**MIDWEST PLASTICS CORPORATION and Ray Hodge, Appellants,**

**v.**

**PROTECTIVE CLOSURES COMPANY, Inc., Appellee.**

**No. 6307.**

United States Court of Appeals
Tenth Circuit.

Nov. 14, 1960.

Rehearing Denied Dec. 16, 1960.

John H. Widdowson, Wichita, Kan. (T. L. O'Hara, Wichita, Kan., was with him on brief), for appellants.

Kenneth R. Sommer, Buffalo, N. Y. (Robert Foulston and Malcolm Miller, Wichita, Kan., were with him on brief), for appellee.

Before MURRAH, Chief Judge, and BRATTON and PICKETT, Circuit Judges.

MURRAH, Chief Judge.

In this diversity suit, the trial court found the appellant-defendants guilty of alleged unfair trade practices, granted injunctive relief and ordered an accounting of the corporate appellant's attributable profits.

The judgment is based upon specific findings to the effect that by extensive advertising and wide distribution, the plaintiff-appellee acquired a secondary meaning in the source of its "red polyethylene tapered caps and plugs," also called "closures," and tradenamed "Tapered Caplugs";[1] that after these closures had become distinctively identified in the trade as coming from the plaintiff, the corporate defendant, acting under the management and direction of appellant Hodge, commenced to offer for sale, and to sell, a range in sizes of "red polyethylene tapered caps and plugs having a configuration and appearance substantially indistinguishable from and interchangeable with that of plaintiff's corresponding closure"; that some of the sizes of the corporate defendant's closures bore the same part numbers as plaintiff's closures of the same size, and none of defendants' closures bore any marks identifying the defendant as the source of such closures; that the corporate defendant distributed to the same trade a catalogue of its products, containing substantial amounts of material copied from plaintiff's trade literature, including part numbers, illustrations in red, dimensions, manner of tabulation and other data and wording either directly or in substance; that in at least one case the corporate defendant purchased through one of its manufacturing agents, and in another case through a fictitious company, quantities of the plaintiff's products, and resold them to its customers, along with some of its own products. The judgment is based upon the further finding that the designation by the defendants of its product as "Tapercap" or "Plug Cap" in its catalogue, packing slips and invoices, was confusingly similar to plaintiff's "Tapered Caplugs"; and that these aforesaid acts are "likely to deceive and to confuse purchasers as to the source of defendant's closures," and therefore constitute a deceptive combination and evidence a deliberate intention to trade upon plaintiff's good will, to the defendant's unjust enrichment and the plaintiff's detriment.

The appellants do not deny these basic facts, indeed they do not deny that their products are substantially indistinguishable from and interchangeable with appellee's corresponding product. Their defense rather is in the nature of confession and avoidance, to the effect that the appellee can acquire no secondary meaning in the source of its product; and that they appropriated nothing not already in the public domain or which the law of unfair trade practices will protect. More particularly, they say that the color red which distinguishes the appellee's product, being basic and generic, is not susceptible of a protectable secondary meaning and moreover, as used in this product is at least partly functional. As to the catalogue simulation, appellants take the position that they did no more than project an industrially standardized description of that which was in the public domain in a manner to best serve the public's interest in it. They liken these closures to "nails, bolts, nuts, screws, etc.," which are completely standardized and capable of but one description. And finally they point to the fact of having ceased publishing the copied catalogue and having destroyed all available copies along with the printing plates.

The appellee claims no patent or copyright in the products, rather it bases its

[1.] The article in suit is technically described as a red "closure comprising in its unmounted condition a single polyethylene body having a circular end wall, an enlarging frustoconical side wall projecting axially from the margin of said end wall and an annular flange projecting radially outwardly from the rim of said side wall." The articles were designed and used as protective coverings and plugs for threaded pipe, tubing, etc.

claim squarely upon a secondary meaning in the source of the product and a palming off of appellant's product as that of appellee.

It seems to be now established beyond any doubt that one cannot acquire a secondary meaning in a basic color to identify or distinguish the source of an article of trade. The underlying reason is that basic colors, as well as functional shapes and designs, are generic and necessarily belong to the public. See Norwich Pharmacal Co. v. Sterling, 2 Cir., 271 F.2d 569; 52 Am.Jur., Trademarks § 48, and authorities cited. Even though the color red, or some other basic color, when used in combination with words, letters or figures to form a distinctive nonfunctional symbol or design may be susceptible of a secondary meaning, it cannot be such when, as here, it is used in combination with the structure, shape and design of the article it identifies. Annotation 150 A.L.R. 1111; Radio Corporation of America v. Decca., D.C., 51 F.Supp. 493.

But quite apart from a secondary meaning in a product or article of trade, the law has always forbidden one trader to pass off his article of trade as that of a rival trader. Restatement of Torts, §§ 711, 712; Nims, Law of Unfair Competition and Trademarks, Vol. 1, p. 52; International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211. "Deceit is the basis of an action of this character. The principle underlying unfair trade practice cases is that one manufacturer or vendor is palming off his merchandise as that of another * * * or that he is vending the products of another as his own * * *." Reynolds & Reynolds v. Norick, 10 Cir., 114 F.2d 278, 281. Since these articles in suit are not protected by copyright, patent or the indicia of a secondary meaning, they belong to the public, and the defendants, or anyone else, are consequently free to make and sell them subject "only the obligation to identify their products in such manner that they will not reasonably be taken for those of plaintiff." In other words, the defendants are under a duty to mark or designate their products so that " * * * purchasers exercising ordinary care to discover whose products they are buying will know the truth and not become confused or mistaken." Id., 114 F.2d at page 281; see also Kellogg Company v. National Biscuit, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73.

The complete absence of any identifying marks on the defendants' products, except the stock numbers which tended to identify them as coming from the appellee, coupled with the deliberate and studied copying of appellee's catalogue, including phonetically similar captions and descriptive illustrations, is entirely sufficient to justify the finding that such acts or omissions are likely to deceive and confuse purchasers as to the source of the defendants' products, and evidences a deliberate scheme to palm off their goods as those of the plaintiff.

It follows that the plaintiff is entitled to a decree adapted "to the general equities of the particular situation," J. C. Penney Co. v. H. D. Lee Mercantile Co., 8 Cir., 120 F.2d 949, 958, including restitution for unjust enrichment based upon an accounting of the corporate defendant's profits during the period of the unfair trade practices. Blue Bell Co. v. Frontier Refining Co., 10 Cir., 213 F.2d 354. We hold therefore that (1) the defendants are free to make and sell the same products made and sold by the plaintiff, subject only to the obligation to identify them in a manner to avoid deceptive similarity; and (2) the plaintiff is entitled to an accounting during the period of unfair competition.

We leave to the trial court the province of fashioning a decree affording injunctive relief and restitution in accordance with these views.

The judgment of the trial court is therefore vacated and the cause remanded for that purpose.