Harold Tessler, J.
The plaintiff is engaged in the contracting, distribution and sale of small boat equipment. In the course of its business it has established catalogue numbers for its different boat equipment which are well known in the boating industry and orders are obtained and sales made by reference thereto. It has brought this action against its former president and director and the competing corporation which he has organized, to restrain unfair competition and infringement of its alleged trade-mark used in connection with its manufacture and sale of transom pads, and for damages, and now moves for a temporary injunction restraining the defendants “ from using the catalogue numbers of plaintiff in connection with the manufacture and sale of transom pad, and other articles of the character manufactured and sold by plaintiff ’ ’.
There is no denial by the defendants that the catalogue numbers used by them in their advertising are identical with those of the plaintiff. It is admitted in the opposing affidavit of the individual defendant that “ for convenience in placing orders deponent continued to use #1121 to designate Black and #1122 to designate White — as a matter of fact our #1132 is a ‘ Giant ’ White while Worthington #1132 is ‘Giant’ Black” but he contends that “ Nobody who orders #1121 from lister is deceived in thinking he is buying a Worthington product.” That contention is belied by a number of letters from customers *830 of the plaintiff, one of which, dated November 16, 1960, states: “ We are interested in knowing if Mr. William Von Zehle will be representing your company, through Lister Industries, Inc. We have received some literature from him, which included your ‘ No-Vibe Transom Pad ’ using your same number. Are we to go through Mr. Zehle and Lister Industries, Inc., or direct to you.”
Another, dated April 15, 1961, reads as follows:
” We are quite confused over who is handling the Worthington line. We have received and have seen advertisements from Lister Co., which is using the identical products catalog numbers and prices.
‘1 Will you please advise us where we are to send our orders for Worthington Products? ”
A third letter, dated April 20, 1961, states: “ In the past we have represented your company as a distributor. In the last few months we have received various advertising brochures from an organization by the name of Lister. This company offers us the same product numbers and prices as your corporation. We know that the president of Lister was formerly [sic], the president of Worthington Products therefore, we are desirous of knowing if there is any connection between the two organizations. ’ ’
Defendants argue that catalogue numbers cannot of themselves, except in the very rarest instances, acquire such significance as to indicate to the public that the product is made by a particular manufacturer, and that, in any event, the plaintiff has delayed in seeking the drastic remedy of a temporary injunction, and, therefore, if for no other reason, this motion should be denied.
Simply stated, unfair competition “ is nothing but a convenient name for the doctrine that no one should be allowed to sell his goods as those of another.” (Vogue Co. v. Thompson-Hudson Co., 300 P. 509, 512.) The test is whether the name or mark used by the defendants is likely to confuse and mislead the public and injure plaintiff’s name, reputation or business. (Sullivan v. Sullivan Radio & T. V., 1 A D 2d 609.)
In the case at bar the defendants have adopted the catalogue numbers of the plaintiff, which were in use, and indeed, were established by the individual defendant when he was its president. These catalogue numbers have been sufficiently shown to indicate a connection with the plaintiff’s name, so as to cause confusión in the minds of customers when reading advertising matter of the déféndants, in which the same products are identi *831 fled by reference to the identical numbers in the catalogue of the plaintiff.
The obligation of the defendants is to identify their products in such a manner that they will not reasonably be taken for those of the plaintiff. (Midwest Plastics Corp. v. Protective Closures Co., 285 F. 2d 747, 750.) Adopting plaintiff’s catalogue numbers for such products when they were arbitrarily chosen to identify them as plaintiff’s at the time the individual defendant was its executive officer, hardly meets the test of fairness, now that the said individual defendant is no longer connected with the plaintiff and is engaged, through the corporate defendant, in competition with plaintiff.
The contention that the plaintiff is guilty of laches in making its motion is without merit, as is also the claim that the plaintiff has not shown what damages it has actually sustained or will sustain. That the adoption of the catalogue numbers connected with plaintiff’s product tends to confuse, there can be no question, in view of the letters above referred to. “It is the liability to deception which the remedy may be invoked to prevent. It is sufficient if injury to the plaintiff’s business is threatened or imminent to authorize the court to intervene to prevent its occurrence. The owner is not required to wait until the wrongful use of his trade mark has been continued for such a length of time as to cause some substantial pecuniary loss.” (Taendsticksfabriks Akticbolagat Vulcan v. Myers, 139 N. Y. 364, 367-368.)
The motion is accordingly granted as prayed for upon the plaintiff’s furnishing an undertaking in the sum of $1,000, at the time the order is settled. There should, however, be an early trial. To that end it is directed that the case be placed upon the calendar for trial on May 25, 1961, subject to the approval of the Justice presiding and upon the payment of the necessary fees.