408 F.2d 54
 K-S-H PLASTICS, INC., a Missouri corporation, Appellant,
v.
CAROLITE, INC., a California corporation and J. W. Carroll & Sons, a California corporation, Appellees.
K-S-H PLASTICS, INC., a Missouri corporation, Appellant,
v.
SUNBEAM LIGHTING COMPANY, Inc., a California corporation, Appellee.
 No. 22049.
 No. 22049-A.
 United States Court of Appeals Ninth Circuit.
 February 26, 1969.
 Rehearing Denied April 8, 1969.
 
 COPYRIGHT MATERIAL OMITTED Owen J. Ooms and E. F. Adams, Chicago, Ill., Wm. T. Brandlin, Los Angeles, Cal., for appellant.
 Spensley, Horn & Jubas, Los Angeles, Cal., for appellee.
 Before DUNIWAY, ELY and HUFSTEDLER, Circuit Judges.
 DUNIWAY, Circuit Judge:
 
 
 1
 The plaintiff below, K-S-H Plastics, Inc., appeals from judgments entered in two companion cases involving trademark and unfair competition questions. The cases were tried together, but the trial judge made separate findings and entered a separate judgment in each case. K-S-H sought injunctions against the use by defendant Carolite, Inc.,[1] of certain of its trademarks and trade symbols, and against the palming off of Carolite's products as those of K-S-H by defendants Carolite and Sunbeam Lighting Co., Inc. The district court found for defendants regarding the trademark and trade symbol claims and granted narrowly restricted relief on one palming-off claim. We affirm.
 
 
 2
 Jurisdiction in the Sunbeam case is founded on diversity. 28 U.S.C. § 1332. Jurisdiction in the Carolite case rests on 28 U.S.C. § 1338 as read with 15 U.S.C. § 1121 (trademark and joined unfair competition claims). See Ross-Whitney Corp. v. Smith Kline & French Laboratories, 9 Cir., 1953, 207 F.2d 190.
 
 
 3
 K-S-H manufactures plastic lighting panels, as does Carolite. Sunbeam makes lighting fixtures which use the plastic panels as a component part.
 
 
 4
 The manufacturers of plastic lighting panels are a part of the building construction industry. A number of manufacturers like K-S-H and Carolite supply lighting panels to a channel of trade which includes the fixture manufacturer, electrical contractor, general contractor, and building owner. Architects or lighting engineers, as agents for building owners, prepare specifications identifying the electrical equipment, including lighting fixtures and the lighting panels to be used with the fixtures. Lighting fixture manufacturers then prepare bids from the specifications. Based on these bids, the owner awards the contract to a general contractor or an electrical equipment contractor. In either case, a purchase order will be placed with an electrical equipment distributor. The distributor orders the fixtures from the lighting fixture manufacturers. The fixture manufacturers order the panels from suppliers like K-S-H or Carolite. If the lighting panel is specified to be that of a particular lighting panel manufacturer, the panel is ordered from that manufacturer, or approval is obtained by the fixture manufacturer for a substitute panel; otherwise the fixture manufacturer will buy the panel from any panel manufacturer that makes it.
 
 
 5
 This case primarily involves questions of confusion over the designation of panels on the part of lighting engineers and fixture manufacturers, and of palming off one panel manufacturer's products for those of another.
 
 I. The Manufacturers' Trademarks
 
 6
 K-S-H claims that Carolite has infringed its registered trademark "K-LITE" by use of the latter's registered trademark "CAROLITE." In its Finding No. 15, in case No. 22,049, the trial court found that: "The term CAROLITE is not confusingly similar to the mark K-LITE; the plaintiff has shown no actual confusion or a likelihood of confusion, mistake or deceit by reason of the use of the terms in connection with similar goods."
 
 
 7
 The question is whether Carolite's use of the trademark CAROLITE "is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services." Fleischmann Distilling Corp. v. Maier Brewing Co., 9 Cir., 1963, 314 F.2d 149, 151-152. This test requires consideration of a number of factors, including the visual, verbal, and intellective similarity of the marks, Sleeper Lounge Co. v. Bell Mfg. Co., 9 Cir., 1958, 253 F.2d 720, the class of goods to which the marks are applied, Fleischmann Distilling Corp. v. Maier Brewing Co., supra, the marketing channels through which the goods are sold, Durox Co. v. Duron Paint Mfg. Co., 4 Cir., 1963, 320 F.2d 882, and the intent of defendant in adopting the mark. Fleischmann Distilling Corp. v. Maier Brewing Co., supra.
 
 
 8
 Here the marks are somewhat similar — both use the suffix "lite." But "Kay" (for K) and "Caro" are quite different. The marks apply to goods purchased by fixture manufacturers and designated by architects or lighting engineers who deal with the products continuously and with a fair degree of sophistication. K-S-H argues that the logotype used with the mark CAROLITE adds to the confusion. The letters "caro" are placed within a large "C" to give the following appearance:
 
 
 9
 NOTE: OPINION CONTAINING TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 10
 Nonetheless, in light of the market and the purchasers, the "K" is sufficiently distinguishable from the
 
 
 11
 NOTE: OPINION CONTAINING TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 12
 Further, no wrongful intent may be imputed to Carolite through the use of the suffix "lite," as this suffix commonly is used in lighting industry marks. Evidence as to wrongful intent on Carolite's part is, at the most, conflicting. The trial court correctly held that the mark CAROLITE does not infringe the mark K-LITE.
 
 II. The Alphanumeric Symbols
 
 13
 K-S-H designates its panel types by "alphanumeric" symbols, i. e., combinations of letters and numbers, or "K-numbers," e.g., K-4, K-5, K-11, and K-12. Carolite employs a similar system of letters and numbers for its panels of identical design, e. g., C-4, C-55, C-11, and C-12. At the time of the filing of the complaint, neither K-S-H nor Carolite had registered its symbols as trademarks.
 
 
 14
 K-S-H sought to enjoin Carolite from "advertising, selling or in any manner using the product designations or symbols consisting of a capital letter and numbers which are identical or confusingly similar to those used by plaintiff." K-S-H also sought to prevent Sunbeam from passing-off panels made by Carolite or other suppliers when panels were ordered by the K-number designation with or without the terms K-S-H or K-LITE. Sunbeam and Carolite conceded that they had supplied Carolite panels when panels had been specified by K-number alone.
 
 
 15
 The trial court held that the Carolite C-number designations were not confusingly similar to the K-number pattern designations, and also that K-S-H had not established a secondary meaning of the K-number terms, but that "[t]he primary significance of K-numbers, alone and apart from K-LITE or KSH, both in the trade and among purchasers is one of pattern and not producer." Finding No. 10, in case No. 22,049A. Accordingly, the court refused to enjoin Sunbeam from supplying Carolite or another manufacturer's panels when the order or specification was solely by K-number. It did enjoin Sunbeam from supplying other than K-S-H panels when the order used a K-number in conjunction with K-S-H or K-LITE, and Carolite from knowingly palming off or knowingly inducing or abetting fixture manufacturers like Sunbeam to palm off Carolite's panels as those of K-S-H when the order used a K-number with the terms K-S-H or K-LITE.
 
 A. Trademark rights in the symbols
 
 16
 Since the alphanumeric symbols or K-numbers are not registered marks, any protection must arise from the common law. The parties have debated the common law distinction between technical and non-technical trademarks, as each seeks a favorable burden of proof allocation. K-S-H contends that the symbols are technical trademarks because they are "fanciful, arbitrary, unique, distinctive, and nondescriptive in character." See 3 R. Callmann, Unfair Competition and Trademarks, § 66.1 (2d ed., 1950). From this K-S-H argues that Carolite had, and has failed to sustain, the burden of proving that the K-numbers had become pattern designations or generic symbols. See Dresser Industries, Inc. v. Heraeus Englehard Vacuum, Inc., 3 Cir., 1968, 395 F.2d 457; Ross-Whitney Corp. v. Smith Kline & French Laboratories, 9 Cir., 1953, 207 F.2d 190. Carolite contends that the symbols are not fanciful, etc., and thus not technical marks, and that therefore K-S-H carried, and has failed to sustain, the burden of proving that the symbols had acquired a secondary meaning sufficient to raise them to the status of nontechnical marks. Everest & Jennings, Inc. v. E & J Manufacturing Co., 9 Cir., 1958, 263 F.2d 254, 259-260.
 
 
 17
 The symbols here are not so distinctive that they are valid per se as technical marks and do not require the showing of secondary meaning. Other panel manufacturers use similar alphanumeric designations for their panel configurations. Accordingly, we must examine whether the trial court was clearly erroneous in concluding that the symbols had not acquired a secondary meaning, and did not serve primarily to designate origin. William H. Keller, Inc. v. Chicago Pneumatic Tool Co., 7 Cir., 1923, 298 F. 52, 59. See also Kellogg Co. v. National Biscuit Co., 1938, 305 U.S. 111, 118-119, 59 S.Ct. 109, 83 L.Ed. 73; Everest & Jennings, Inc. v. E & J Manufacturing Co., supra.
 
 
 18
 The evidence indicates that other panel manufacturers used very similar symbols, e. g., P-4, R-4, and that some of them used their symbols before K-S-H began using its K-designations. The evidence is sufficient to show that while the "K" usage may have been peculiar to K-S-H, the overall trade use of similar numbers was such that the K-numbers cannot be said primarily to designate origin.
 
 
 19
 Further, the trial court's finding that the symbols had become generic terms designating pattern and not producer is fully supported by the evidence. A number of fixture manufacturers testified that K-numbers had become a short-hand industry expression for a given panel configuration. Some fixture manufacturers actually quoted K-numbers as a part of their catalog alphanumeric designation for certain types of light fixtures.
 
 
 20
 Under these circumstances, the trial court properly refused to enjoin Carolite's use of "C-numbers."
 
 B. Palming off
 
 21
 The tort of palming off by a third party or dealer is defined as the unauthorized substitution of the goods of one manufacturer when the goods of another are requested by the customer. See Singer Mfg. Co. v. Golden, 7 Cir., 1948, 171 F.2d 266, 268. The trial court properly enjoined Sunbeam's substitution of panels made by manufacturers other than K-S-H when an order came in for panels designated by K-number in conjunction with the term K-S-H or its trademark K-LITE. But K-S-H is barred from obtaining any further relief by the proof at trial that K-numbers used alone did not primarily indicate origin or that the purchaser specifically wanted K-S-H panels.[2]
 
 
 22
 III. The Alleged Overall Carolite Plan to Palm Off Its Products as Those of K-S-H
 
 
 23
 Finally, K-S-H alleges that Carolite had adopted a "predatory plan and an intention to confuse and deceive purchasers" by engaging in a series of trade practices, none of which standing alone would be sufficient to prove palming off. The facts upon which K-S-H relies are: (1) adoption of confusingly similar alphanumeric symbols to designate panel types; (2) use of trade catalogs with nearly identical format and testing laboratory performance data; and (3) use of similar marketing methods — i. e., continual introduction of products and product improvements just after K-S-H introduced the identical panel design for its products. K-S-H alleges that Carolite made it impossible for fixture manufacturers and lighting engineers to distinguish Carolite products from K-S-H products, particularly when ordering or specifying panels. K-S-H does not assert that Carolite does not have the right to copy its products, nor does it claim any copyright protection in any of its catalogs or marketing materials.
 
 
 24
 The two cases upon which K-S-H relies, Midwest Plastics Corp. v. Protective Closures Co., 10 Cir., 1960, 285 F.2d 747, and American Safety Table Co. v. Schreiber, 2 Cir., 1959, 269 F.2d 255, support the proposition that while a manufacturer can imitate a product, he cannot market it in a way which he knows will induce purchasers to buy it thinking that it is the product of another. See also Kellogg Co. v. National Biscuit Co., 1938, 305 U.S. 111, 119, 59 S.Ct. 109, 83 L.Ed. 73; William R. Warner & Co. v. Eli Lilly & Co., 1924, 265 U.S. 526, 532, 44 S.Ct. 615, 68 L.Ed. 1161; Swank, Inc. v. Anson, Inc., 1 Cir., 1952, 196 F.2d 330, 332.
 
 
 25
 Sears, Roebuck & Co. v. Stiffel Co., 1964, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed. 2d 661, and Compco Corp. v. Day-Brite Lighting, Inc., 1964, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669, do not bar this action; they permit the copying of unpatented products, a feature of the cases on which K-S-H does not rely. Its reliance is on identification factors as found in designation and marketing practices.
 
 
 26
 But notwithstanding the presence of an appropriate theory for recovery, K-S-H has not been able to prove its case. The trial court specifically found that no confusion existed between the K-S-H and Carolite symbols. The catalogs were also standard to the industry, and Carolite's catalog is prominently marked with its name. Carolite's catalog is also gold where the K-S-H catalog is blue-green in color. The testing laboratory used by the firms was the same, but the laboratory is a standard source of testing data for the industry. Many of the panels newly introduced on the market came from patterns produced by the same engraver, but these patterns were available to all manufacturers. In short, the evidence forecloses any conclusion that the trial court's finding is clearly erroneous. Swank, Inc. v. Anson, Inc., supra, and Viavi Co. v. Vimedia Co., 8 Cir., 1917, 245 F. 289, are comparable.
 
 
 27
 We are not convinced that the trial court applied an incorrect legal standard, i. e., that the court erroneously believed that K-S-H's case was concluded "by its recognition of the fact that it neither claimed nor had any monopoly rights in the articles involved." Swank, Inc. v. Anson, Inc., supra, 196 F. 2d at 332.
 
 IV. Costs
 
 28
 In its reply brief in the Carolite case, K-S-H contends that the trial judge erroneously refused to award it all of its costs. K-S-H relies on the fact that during the trial the judge indicated that if K-H-S were partially successful, it would award costs to it. As noted earlier, K-S-H was granted some relief. But a judge is not bound by every remark that he makes during the trial and before he actually decides the case. He can change his mind as he goes along.
 
 
 29
 Rule 54(d), Fed.R.Civ.Proc., provides for an award of costs "as of course to the prevailing party unless the court otherwise directs." We have said that the trial court has a wide discretion in awarding costs and that we are hesitant to say that the discretion has been abused. A. T. Smith and Sons v. N. P. Van Valkenburgh Co., 9 Cir., 1964, 337 F.2d 702. The trial judge's careful consideration here of such factors as the complexity of the case, the extensive discovery made by the parties, and the limited relief granted to K-S-H forestalls our making any finding of abuse of discretion as the court did in A. T. Smith.
 
 
 30
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Defendant J. W. Carroll & Sons is a related corporation which apparently is no longer engaged in the activities complained of. Thus, the opinion will refer only to Carolite, Inc. as the defendant in No. 22,049
 
 
 [2]
 We do not believe that we have to choose between California or federal law regarding this claim of unfair competition. "[T]he federal and state law is not essentially different; and both federal and state courts have readily borrowed decisions from one another and from the entire body of law in this field. * * * Under the circumstances we shall rely upon the `indeterminate general law.'" Hygienic Specialties Co. v. H. G. Salzman, Inc., 2 Cir., 1962, 302 F.2d 614, 619 n. 9. Moreover, if California law does control, a question which we need not decide, we are cited to no California authority that would require a reversal here