NORM THOMPSON OUTFITTERS, INC., an Oregon corporation, Appellant,

v.

GENERAL MOTORS CORPORATION, a Delaware corporation, Appellee.

No. 24931.

United States Court of Appeals, Ninth Circuit.

Sept. 24, 1971.

J. Pierre Kolisch, John W. Stuart, of Kolisch & Hartwell, Portland, Or., for appellant.

George L. Wagner, of McColloch, Dezendorf, Spears & Lubersky, Portland, Or., for appellee.

Before HAMLEY, CARTER and CHOY, Circuit Judges.

CHOY, Circuit Judge:

Norm Thompson Outfitters, Inc., an Oregon Corporation, sued General Motors Corporation, a Delaware corporation, for an injunction and damages charging unfair competition arising from the use by General Motors of the slogan "Escape From The Ordinary" in promoting sales of Oldsmobile automobiles. The District Court found that under the common law of Oregon (this being a case of diversity) the slogan is not a valid trademark and there was no unfair competition. (300 F.Supp. 274 (D.Or.1969)) Norm Thompson appeals from the adverse judgment. We affirm.

About 1958, appellant began using the slogan "Escape From The Ordinary" in advertising goods such as clothing, sports equipment and articles for smokers, which it sold mainly by mail order throughout the United States. Between 1958 and 1968, it made sales totaling about ten million dollars and expended about two million dollars in advertising, in many instances using the slogan "Escape From The Ordinary."

Commencing about 1954, General Motors had been using such slogans as "Get Out Of The Ordinary", "Rocket Out Of The Ordinary", and "Time To Get Out Of The Ordinary", in connection with its sales of Oldsmobiles. In 1968, it began to use "Escape From The Ordinary."

Norm Thompson does not sell automobiles. General Motors does not sell clothing and other goods purveyed by Norm Thompson.

The issues on this appeal are:

1. Whether the trial court was clearly erroneous in finding as facts:

   a.  That the slogan is descriptive, rather than a suggestive slogan, or a coined, arbitrary, or fanciful slogan.

   b.  That appellant's use of the slogan has not endowed it with a secondary meaning.

   c.  That appellee's use of the slogan is not likely to cause public confusion as to the source of appellant's goods.

2. Whether appellant is entitled to injunctive relief under the "dilution theory" of trademark protection, even if the findings of fact are sustained and despite the absence of competition between the parties.

In our review of the trial court's findings from disputed facts, we are subject to the "clearly erroneous" constraint imposed by Rule 52(a), Federal Rules of Civil Procedure.[1] K–S–H Plastics, Inc. v. Carolite, Inc., 408 F.2d 54, 58 (9th Cir. 1969). In Cataphote Chemical Corporation v. DeSoto Chemical Coatings, Inc., 356 F.2d 24, 26 (9th Cir. 1966) we noted:

"* * * the severe limitations imposed on an appellate court in reviewing findings of fact * * * It is not our function to reevaluate the evidence presented below * * * Our

---

1. Rule 52(a) provides in part:

   "* * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses * * *"

   A finding which is solely dependent upon the resolution of disputed facts and inferences to be drawn therefrom, cannot be characterized as a conclusion of law. Lundgren v. Freeman, 307 F.2d 104, 115 (9th Cir. 1962); Fleischmann Distilling Corp. v. Maier Brewing Company, 314 F.2d 149, 152 fn. 2 (9th Cir. 1963).

task, rather, is to determine if there exists evidence of substance to support the findings of fact of the trial court * * *"

## I

### *The finding that the slogan is descriptive*

3 Callmann, Unfair Competition, Trademarks and Monopolies 112, § 71.1 (3rd Ed.1969) defines descriptive marks as follows:

"Designations are descriptive if they naturally and normally direct attention to the qualities, ingredients, appearance, effect, purpose, or other features of goods or services * * *"

In Van Camp Sea Food Co. v. Westgate Sea Products Co., 28 F.2d 957, 958 (9th Cir. 1928) this court observed:

"* * * That terms merely descriptive of quality cannot be appropriated as trade-marks is too well settled to require citation of authorities * * *"

See also Carter-Wallace, Inc. v. Procter and Gamble Company, 434 F.2d 794, 800 (9th Cir. 1970), and the cases cited therein.

The cases which have determined the nature of a trademark in both federal and state jurisdictions, either pursuant to statute or at common law, are manifold. Each, of course, turns on its own unique set of facts.

The Supreme Court of Oregon, to which we look for authority in this diversity case,[2] adheres to the general rule. It held in 88¢ Stores, Inc. v. Martinez, 227 Or. 147, 361 P.2d 809 (1961) that the name "88¢ Store" was purely descriptive of the price range of goods sold by a store chain, and not entitled to exclusive use protection. See also Truck Ins. Exchange v. Truck Ins. Exchange of 649 South Olive Street, Los Angeles, Cal., 165 Or. 332, 107 P.2d 511 (1940);

Liquidators v. Clifton, 132 Or. 448, 286 P.2d 152 (1930).

There was ample evidence adduced at the trial to support the District Court's finding that "Escape From The Ordinary" was descriptive of the "out of the ordinary" goods vended by appellant. We need look only to evidence presented by appellant itself:

1. Bernard A. Alport, appellant's president, described himself as a "finder of unique items" and an "expert in selling things that people don't need but that they would like to have." Mr. Alport named as exemplary of products sold by his company such items as an Afrikan Shikari hat, a buckskin shirt, a Buffalo Bill bowie knife, water buffalo shoes, leopard cloth cufflinks, Cowegan Indian sweaters, Irish whiskey cake, a knit suit for men, and a replica of the hat "reputedly worn by Sir Francis Chichester on his recent solo trip around the world."

2. Appellant's catalogs were liberally sprinkled with such adjectives as "rare", "unusual", "unique" and "extraordinary" in describing the articles touted in them. Mr. Alport admitted such representations were "characteristic" of the company's advertising copy.

3. Practically every catalog carried a résumé of the "Norm Thompson Story", a narration of company efforts to travel the world in search of unusual items "researched and tested by experts" which, upon acquisition, had been "improved and developed" by the company's key personnel.

Appellant urges, however, that "Escape From The Ordinary" qualifies as a "suggestive" common law trademark, relying on 3 Callmann, supra, 154–55, § 71.2:

"Trademarks can, of course, serve a function in advertising. Any adver-

2. Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1937):

"Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any

case is the law of the state. And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern."

tisement, to be effective, must be suggestive, and the trademark which truly functions as an advertising medium, whether descriptive or arbitrary, must likewise be suggestive.

"Between the primarily descriptive and the clearly arbitrary mark, there is a middle ground wherein terms of mingled qualities are found. It cannot be said that they are primarily descriptive, or that they are purely arbitrary or fanciful without any indication of the nature of the goods which they denominate. Such terms, indeed, shed some light upon the characteristics of the goods, but so applied they involve an element of incongruity, and in order to be understood as descriptive, they must be taken in a suggestive or figurative sense through an effort of the imagination on the part of the observer. Many such suggestive terms have been approved as valid trade-marks by the courts."

The District Court considered and saw fit to disregard this "suggestive" contention. In its opinion (300 F.Supp. 274, 276) it found that: " * * * [appellant] has used the slogan 'Escape From The Ordinary' purportedly suggesting a frame of mind in potential purchasers that they are getting something special or different when they buy the [appellant's] products * * * " and that: "Common English words used in a combination can be a valid trademark if they are merely suggestive rather than primarily descriptive of the characteristics of one's goods," but ruled that the phrase was "primarily descriptive of the characteristics of [appellant's] goods * * * " As we have concluded above, we can not hold the District Court's finding to be clearly erroneous.

## II

*The finding that the slogan had not acquired a secondary meaning.*

We also deem not clearly erroneous the District Court's finding that the ap-

pellant's use of the slogan had not endowed it with a secondary meaning.

■ Although a merely descriptive term fails to endow its originator with the exclusive right to it, if it has by use and association acquired a "secondary meaning", it may confer such exclusivity. 3 Callmann, supra, 337–340 § 77.1.

■ Secondary meaning "contemplates that a word or phrase originally, and in that sense primarily, incapable of exclusive appropriation with reference to an article in the market, because geographically or otherwise descriptive, might nevertheless have been used so long and so exclusively by one producer with reference to his article that, in the trade and to that branch of the purchasing public, the word or phrase had come to mean that the article was his product; in other words, had come to be, to them, his trade-mark. So it was said that the word had come to have a secondary meaning, * * *" G. & C. Merriam Co. v. Saalfield, 198 F. 369, 373 (6th Cir. 1912), aff'd and modified, Saalfield Pub. Co. v. G. & C. Merriam Co., 238 F. 1 (6th Cir. 1917), cert. denied 243 U.S. 651, 37 S.Ct. 478, 61 L.Ed. 947 (1917). See also Carter-Wallace, Inc. v. Procter and Gamble Company, 434 F.2d 794, 802 (9th Cir. 1970).

In 88¢ Stores, Inc. v. Martinez, 227 Or. 147, 152–153, 361 P.2d 809, 812 (1961) the Oregon Supreme Court said that:

"If a name acquires a secondary meaning, the originator of the name is entitled to exclude use of it by others to the extent that the imitator's use causes or is likely to cause confusion of source in the market. 3 Restatement, Torts, Ch. 35 (1938). Confusion of source results if the imitator's use of the name misleads present or prospective purchasers into believing that the imitator's goods or services are in fact those of the originator of the trade name, with the attendant consequences of diverting business from the originator or obtaining the

benefits of the originator's advertising or otherwise interfering with his protectible business interests. 3 Restatement, Torts, §§ 728–730, and especially Comment a to § 730 (1938)."

█ This language of the Oregon Supreme Court indicates that the exclusivity granted to the original user of a trade-mark, even though secondary meaning is established, depends upon potential or actual confusion in the trade area. That Court has held that confusion is one of the indicia of secondary meaning. In Lift Truck Parts and Services v. Bourne, 235 Or. 446, 450, 385 P.2d 735, 737 (1963) the Court stated:

"No one clear test has emerged in the case law as a certain and satisfactory method of showing secondary meaning. The courts tend to consider a number of evidentiary matters, including the degree to which confusion, if any, exists within the particular market, the length of use of the name, amount of advertising, and survey-reaction tests."[3]

The evidence indicated that appellant had used the slogan in advertising in national publications and in its catalogs. However, on frequent occasions when so used, the slogan appeared rather inconspicuously in comparison to the company name "Norm Thompson." Appellant's own expert witness, Dr. Donald D. Parker, Dean of the School of Business Administration at Portland State University, admitted that the type of advertising used by appellant would have little effect in areas of the United States other than Oregon to cause the reader to associate the phrase with Norm Thompson.

Specifically, Dr. Parker allowed that the interrogation of 1000 persons arbitrarily selected from a street in Georgia would produce very few who would associate the phrase with Norm Thompson. Appellant's other efforts to show that the slogan had acquired a secondary meaning consisted of the introduction of six letters written to Norm Thompson by customers inquiring about a possible Thompson-General Motors affiliation. Such letters were too few in number to indicate more than that a paucity of people associated the phrase with Norm Thompson.[4]

Additionally, appellant presented a witness who merely had "wondered first of all how Oldsmobile could be using (the slogan), and the thought came across my mind that did they or did they not have permission to do so." One further witness, a friend of Mr. Alport living in Portland testified that "I associate this phrase completely with Norm Thompson. I associate it with nothing else. He's used it a great deal." Such evidence is regarded as having little value in establishing secondary meaning because:

"Attestations from persons in close association and intimate contact with its (the trade-mark claimant's) business * * * do not * * * reflect the views of the purchasing public * * *" * * *. 88¢ Stores, Inc. v. Martinez, 227 Or. 147, 159, 361 P.2d 809, 814 (1961).

The evidence on persons confused regarding possible connection between the two companies suggests a sparseness of people entertaining association of the slogan with Norm Thompson.

---

3. On the other hand, it is clear that other courts grant exclusivity to the user of a trade-mark attaining a secondary meaning *regardless of the possibility of confusion* among the public. Wilhartz v. Turco Products, 164 F.2d 731, 733 (7th Cir. 1947). 3 Callmann, supra, 349 § 77.3 does not consider confusion to be an element of secondary meaning, confining the required criteria to (1) length and manner of use, (2) nature and extent of advertising and promotion of the mark

and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between that name and a particular product or venture.

4. There was absent here the extensive survey which the Oregon Supreme Court felt persuasive in establishing secondary meaning in Lift Truck Parts and Service, Inc. v. Bourne, 235 Or. 446, 450, 385 P.2d 735, 737 (1963).

We cannot hold that the District Court erred in finding the evidence was inadequate to sustain appellant's claim and burden of proof that the phrase had acquired a secondary meaning.

### III

### *The finding of lack of confusion.*

We also hold not clearly erroneous the District Court's finding that use by General Motors of the slogan in the advertising of Oldsmobile automobiles is not likely to cause the public to confuse Norm Thompson as the source of its cars, or, vice-versa, to mislead the public into concluding that General Motors is a supplier of the products sold by Norm Thompson. The District Court found absence of confusion as to source saying: "Inasmuch as I have found that the phrase does not denote the source of (appellant's) goods, and thus does not acquire a secondary meaning, it cannot be held to cause public confusion of source when Oldsmobile uses the words." As we have discussed above, confusion within the particular market is one of the indicia of secondary meaning under Oregon law.

Automobiles, in contrast to clothing and like goods, are so vastly different that it is difficult to regard confusion as possible. The marketing channels of the companies are also greatly dissimilar, appellant being predominantly in the mail order business, and appellee having a far-flung network of retail dealers commonly known to all segments of the American public. Furthermore, in all advertisements in which the slogan was used by each party, the name of the company invariably accompanied the slogan. The most that a prospective purchaser might have inferred from this, if indeed he bothered to consider the matter at all, is that two different and unrelated companies were using a common phrase in their advertising.

Appellant asserts, nonetheless, that consideration must be given to the likelihood of "confusion of business" in the light of current business practices, including conglomerate corporate enterprises and wide product diversification; that the relevant public might when seeing cars, clothing, and sports equipment all advertised under the slogan "* * * believe that there was a common sponsorship or ownership, e. g., General Motors had acquired Norm Thompson." Appellant bases this novel proposition principally on a footnote in Fleischmann Distilling Corp. v. Maier Brewing Company, 314 F.2d 149 (9th Cir. 1969) f. n. 6, page 155, and on Carling Brewing Co., Inc. v. Philip Morris, Inc., 297 F.Supp. 1330 (D.C., N.D.Ga. 1968).

In that footnote 6 in *Fleischmann*, appellant says "the Court quotes approvingly from Callmann's 2d ed. that even though there is no competition between two products bearing the same trademark, the party who originated the trademark should be free to use the trademark as he sees fit without any interference from another which might tarnish his reputation or prevent extension of the trademark to other goods." However, this Court's ruling in *Fleischmann* was made expressly on "confusion as to the source of origin", where two manufacturers of alcoholic beverages used "Black & White" on their products, since the uses were so related that they were "likely to be connected in the mind of a prospective purchaser." *Fleischmann*, supra, 314 F.2d 159. Thus, *Fleischmann* is no support to appellant's point; nor is the Callmann quotation which presupposes a valid trademark, something which is not present here.

Similarly, the Court in *Carling* held that since most beer drinkers smoke cigarettes as they drink, the products are related and "it is consequently not seen how consumer confusion as to source could be avoided." *Carling*, supra, 297 F.Supp. 1337. That Court's statement on "the general current trend of previously specialized American industries to diversify their activities and to engage in production of different types of products" was only intended to note that the trend was a factor to be weighed in

considering confusion of sponsorship; i. e. source.

## IV

### *The Dilution Theory.*

Finally, appellant contends that regardless of the absence of confusion or competition between the parties, injunctive relief should be given appellant on the "dilution theory" of trademark protection. Under the dilution theory "* * * the defendant's continued use of an identical or similar trademark will inevitably dilute the distinctiveness of the plaintiff's mark. The gravamen of a dilution complaint is that the continuing use of a mark similar to the plaintiff's will inexorably have an adverse effect upon the value of the plaintiff's mark, and that, if he is powerless to prevent such use, the plaintiff's mark will be eventually deprived of all distinctiveness * * * This injury differs materially from that arising out of orthodox confusion; if the similarity between the marks in question provokes confusion, the result thereof is an immediate or imminent loss of sales, because the confusion tends to divert potential patronage from the plaintiff to the defendant. Such confusion creates an immediate injury, while dilution is a cancer which, if allowed to spread, will inevitably destroy the advertising value of the mark." 3 Callmann, supra, 954–955. This theory was apparently initially given recognition in the United States in an article, The Rational Basis of Trademark Protection, 40 Harv.L.Rev. 813 (1927), by Frank I. Schechter, who adopted it from German law, and Schechter proposed that dilution of and in itself should give rise to a cause of

action for trademark infringement. 3 Callmann, supra, § 84.2.

The District Court held that Oregon has rejected the dilution theory, citing *88¢ Stores, Inc.,* supra.[5] We are required "to accord much deference to the opinion of the district judge with respect to the law of the state in which he sits." Bigjoe v. Pioneer American Ins. Co., 446 F.2d 28 (9th Cir. 1971). However, we need not belabor this issue for in view of our conclusions that the slogan is descriptive and has not acquired a secondary meaning, and therefore, is not a valid common law trademark, there exists nothing to which the protection of the dilution theory can be applied.[6] Carter-Wallace, Inc. v. Procter and Gamble Company, 434 F.2d 794, 803 (9th Cir. 1970).

Affirmed.

---

5. Such rejection of the dilution theory appears to be general in the United States, which 3 Callmann, supra, 957 § 84.2 deplores: "It is a sad commentary on (and an unhappy testimonial to) our judicial process that the courts have not fully appreciated the concept of dilution. Indeed it is especially disconcerting to read opinions which, despite state statutes clearly declaring that confusion is not a premise of dilution, still cling to the commonplace that dilution cannot be recognized as actionable unless the element of 'likely confusion' is present."

While this appeal was pending, Oregon adopted an anti-dilution statute. Ch. 122 § 2, Oregon Laws of 1971.

6. Appellant had twice applied for registration of the slogan in the United States Patent Office, but abandoned both applications for unexplained reasons.