AMERICAN SCIENTIFIC CHEMICAL,
INC., Plaintiff-Appellant,

v.

AMERICAN HOSPITAL SUPPLY
CORP., Defendant-Appellee.

No. 81–3282.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1982.

Decided Oct. 22, 1982.

William H. Drummond, Drummond & Nelson, Phoenix, Ariz., for plaintiff-appellant.

John W. Chestnut, Chicago, Ill., argued for defendant-appellee; Tilton, Fallon, Lungmus & Chestnut, Chicago, Ill., Guy J. Rappleyea, Black, Helterline, Beck & Rappleyea, Portland, Or., on brief.

Before CHOY, TANG and BOOCHEVER, Circuit Judges.

TANG, Circuit Judge:

This is a common law trade name infringement action. Plaintiff-Appellant American Scientific Chemical (American Scientific) sought to enjoin Defendant-Appellee American Hospital Supply Corporation (American Hospital) from changing its division's name to American Scientific Products. The district court found that American Scientific had not acquired secondary meaning in its name and had no legally protectable trademark. American Scientific appeals, arguing that the findings of fact of the district court indicate the acquisition of secondary meaning. We reverse the district court and remand for findings on likelihood of confusion.

American Scientific, founded in 1967, sells chemicals and chemical handling accessories to laboratories and hospitals. Ameri-

can Scientific has expanded beyond its original Oregon market, and affiliate corporations, similarly named (American Scientific & Chemical), operate in Washington, Texas, Arizona, and Canada, serving markets in those areas and in California, Idaho, Montana and New Mexico.

In 1979, American Scientific had a media advertising budget of only $6,000. It believes that media advertising is not cost effective due to its regional market and limited number of customers. American Scientific depends on personal contact between its salesmen and customers, tradeshow exhibits, and advertisements in regional trade journals and directories for its promotion.

American Hospital was founded in 1922. A giant in the health care industry, it is composed of 29 divisions, one of which is Scientific Products, founded in 1952. Scientific Products (S/P) is a wide-ranging "biomedical" business; one portion of its business is generated by sales of chemicals and accessories sold to laboratories and hospitals. While S/P competes in every market that American Scientific has entered, S/P operates in many other markets as well. S/P's 1980 sales were almost $600,000,000, and its 1980 advertising and promotion expenditures were over $8,500,000. That portion of those receipts and expenditures attributable to laboratory chemicals and accessories sales is not distinguished in the record.

In 1976, American Hospital embarked on a "corporate identity program," intending to identify its divisions more closely with the parent company's name, American Hospital Supply. S/P decided to adopt the name "American Scientific Products," effective July 1, 1980.

In early June, 1980, American Scientific became aware of the proposed name change and protested to American Hospital this violation of its trade name. American Scientific filed suit in district court on June 23, 1980. On September 29, 1980, American Scientific filed a motion for a preliminary injunction, and an evidentiary hearing was held. In an Opinion and Order dated February 25, 1981, the district court found that the name-change had not caused actual confusion, that American Scientific's name had not acquired secondary meaning, concluded that it had no "legally protectable common-law trademark" and denied the motion. After the parties stipulated that neither party would produce additional testimony in the event of a trial on the merits, the district court dismissed the action on May 1, 1981. We reverse the holding of the district court, and remand for further proceedings.

■ The name American Scientific was not inherently distinctive when adopted by the plaintiff in 1967. But almost any symbol can serve as a trade name and be protected from infringement if it has acquired that degree of consumer association and recognition characterized as secondary meaning, and can show likelihood of confusion with a competitor. The district court found no secondary meaning, and consequently did not address the question of likelihood of confusion. Because the acquisition of secondary meaning is a question of fact, *Norm Thompson Outfitters, Inc. v. General Motors Corp.,* 448 F.2d 1293, 1296 (9th Cir. 1971), the findings of the district court cannot be set aside unless clearly erroneous. The district court's finding that American Scientific had not acquired a secondary meaning in its name is clearly erroneous.

■ "Secondary meaning has been defined as association, nothing more". *Carter-Wallace, Inc. v. Procter & Gamble Co.,* 434 F.2d 794, 802 (9th Cir. 1970). In order to obtain protection for its trade name, plaintiff "must show that the primary significance of the term in the minds of the consuming public is not the product but the producer". *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938).

■ Although there are numerous cases determining secondary meaning, there is no consensus on its elements. In *Carter-Wallace,* the court asked simply if the mark denotes "a single thing coming from a sin-

gle source", 434 F.2d at 802. Here, the district court looked to 1 McCarthy, *Trademarks and Unfair Competition,* §§ 15:10–15:21, and cited ten forms of evidence of secondary meaning. It said:

Diverse types of evidence have been considered by courts in determining whether a mark has acquired a secondary meaning. The evidence may include customer surveys, customer testimony, the use of the mark in trade journals, the size of the company, number of sales, the amount, nature and geographical scope of advertising, the period of time during which the mark has been used, the number of customers, and actual confusion.

(E.R. p. 90)

Using the McCarthy criteria, the foundational facts in the district court's opinion indicate that American Scientific's name has acquired secondary meaning. The court found that American Scientific has used its name for over 13 years (now over 14 years); competes in a market that is specialized, limited and close-knit; advertises in regional trade journals and directories; sends representatives to trade shows; enjoys nationwide exposure from its regional branches and mail-order business; is known in the industry; is continuing to expand into new regions; provides a specialized service; employs an effective form of advertising in its reliance on personal contact; introduced in evidence 149 purchase orders from a variety of companies, each addressed to "American Scientific"; and introduced 28 examples of correspondence from suppliers, each addressed to "American Scientific." These findings in the district court's opinion fulfill the requirements delineated by McCarthy.

In addition, actual confusion is an indicium of secondary meaning, and the trial court's finding that the evidence of actual confusion was weak is clearly erroneous. American Scientific provided a substantial body of evidence of confusion, evidence that is ordinarily difficult to produce. Plaintiff identified 76 instances of actual confusion of customers, suppliers, and others. American Scientific has received orders and con-

firmations intended for the defendant, and in one instance even received material from one of American Hospital's own divisions that was intended for the American Scientific Products division of American Hospital.

In its findings on confusion as an element of secondary meaning, the district court's opinion emphasizes the lack of a consumer survey or consumer testimony. The Supreme Court of Oregon has noted that "a business is reluctant to hale its own customers into court and thereby run the risk of losing their business in the future". *Lift Trucks Parts & Service, Inc. v. Bourne, et al.,* 235 Or. 446, 385 P.2d 735, 737 (1963), and this may well be the reason plaintiff wished not to involve its customers in the case. Similarly, survey evidence would have inconvenienced customers and been prohibitively expensive to produce. In view of the evidence plaintiff has presented, consumer testimony is not required to prove secondary meaning.

American Hospital contends that American Scientific's claims that it does not advertise extensively because advertising is not "cost effective" are belied by S/P's own extensive advertising. It similarly points out that American Scientific's personal contact with customers is considerably less than S/P's, with seven salespeople in an area in which S/P has 86. Comparisons of advertising expenditures are not dispositive of a determination of secondary meaning. *See Carter-Wallace,* 434 F.2d at 800.

It appears from its Opinion that the district court believes American Hospital's excellent reputation in its field is germane to this action. It is not. American Scientific complains that its customers are mistakenly patronizing a competitor, and draws no comfort from the excellent service they may be receiving. American Scientific has proved a legally protectable right to its name, the extent of which protection awaits the district court's findings on likelihood of confusion.

Finally, American Hospital emphasizes that numerous other companies have used names which include the words "American"

and/or "Scientific", including three of defendant's divisions. Apparently, American Hospital contends that these words are so descriptive that American Scientific cannot ever prove secondary meaning. It is mistaken. American Hospital's evidence of the use of a mark by third parties on wholly unrelated products is of little or no probative value. The companies cited by American Hospital are not direct competitors of American Scientific in its specialized market, and cannot dilute its right to its name.

American Scientific produced a substantial body of evidence proving that it had acquired a secondary meaning in its name. The finding of the district court to the contrary is clearly erroneous. Because American Scientific must prove likelihood of confusion in order to prevail, we reverse the district court and remand for findings on likelihood of confusion.

REVERSED and REMANDED.