826 F.2d 1071
 9 ITRD 1064, 5 Fed. Cir. (T) 145
 Unpublished disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
UNION MANUFACTURING CO., INC., Appellant,
v.
UNITED STATES INTERNATIONAL TRADE COMMISSION, et. al., Appellees.
 United States Court of Appeals, Federal Circuit.
 July 2, 1987.
 
 Before BALDWIN, Senior Circuit Judge,* and NIES and ARCHER, Circuit Judges.
 BALDWIN, Senior Circuit Judge.
 
 DECISION
 
 1
 Union Manufacturing Company, Inc. (Union) appeals from these decisions of the United States International Trade Commission (Commission) in In re Certain Vacuum Bottles and Components Thereof, Investigation No. 337-TA-108: (1) no violation of 19 U.S.C. Sec. 1337 based on common law trademark, because Union failed to establish secondary meaning in the shape of bottles it manufactures; (2) denial of Union's petition for reconsideration of the Sec. 1337 decision and of its motion for relief based on newly discovered evidence; and (3) refusal not to initiate a second investigation based on a second complaint filed by Union. We affirm all three decisions.
 
 OPINION
 
 2
 To succeed in this case, Union had to prove secondary meaning, i.e., that the design or overall appearance of the product is so recognized that an association has developed in the buyers' minds between the alleged mark and a single source of the product. Textron, Inc. v. United States Int'l Trade Comm'n, 753 F.2d 1019, 1023, 224 USPQ 625, 627, 3 Fed.Cir. (T) 72, 76 (1985).
 
 
 3
 Whether secondary meaning exists is a fact question, Petersen Mfg. Co. v. Central Purchasing, Inc., 740 F.2d 1541, 1550-51, 222 USPQ 562, 569-70 (Fed.Cir.1984). On appeal from the Commission, we review findings of fact under a "substantial evidence" standard, i.e., we determine whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Atlantic Sugar, Ltd. v. United States, 744 F.2d 1556, 1562, 2 Fed.Cir. (T) 130, 136 (1984). Under that standard, Union has not demonstrated to us that the Commission's finding of no secondary meaning is improper.
 
 
 4
 The Commission recognized two types of evidence one can use to prove secondary meaning: circumstantial and direct. Strictly speaking, the latter would be actual testimony of buyers as to their state of mind, but a properly conducted survey of buyers is now considered to be a generally acceptable substitute for the testimony of buyers. Circumstantial evidence, on the other hand, is evidence from which buyer association might be inferred, such as years of use, extensive amount of sales and advertising, and any similar evidence showing wide exposure of the mark to the buyer class. 1 J. McCarthy, Trademarks and Unfair Competition Secs. 15.10 at 684-85 and 15.16 at 694 (2d ed. 1984).
 
 
 5
 To determine secondary meaning in this case, Union presented evidence of extensive advertising and sales for over 15 years. The Commission characterized that evidence as circumstantial, but it determined that the evidence did not support the conclusion the Commission had to make if Union were to be successful, i.e., the bottle shape and appearance have attained secondary meaning independent of the word mark (UNO-VAC) on the bottle. Union's evidence of sales and advertising, reasoned the Commission, pertained for the most part to bottles having the UNO-VAC word mark on them--hence, such sales and advertising could not support an inference of secondary meaning with respect to the bottle shape in the absence of UNO-VAC. We see no error in the Commission's analysis. Union's evidence failed to show that its marketing "create[d] a commercial impression separate and apart from the word marks appearing thereon [that] serves, in and of itself, as an indication of origin." In re Mogen David Wine Corp., 372 F.2d 539, 542, 152 USPQ 593, 596 (CCPA 1967). See also In re McIlhenny Co., 278 F.2d 953, 126 USPQ 138 (CCPA 1960).
 
 
 6
 Union argues that the Commission in effect imposed a requirement that survey evidence is indispensable to proving secondary meaning. We conclude that no such requirement was imposed. The Commission stated:
 
 
 7
 Generally, a consumer survey is not required to establish a common-law trademark. Under the specific facts of this case, a consumer survey is necessary to prove that the overall appearance of Union's naked vacuum bottle has achieved secondary meaning separate and distinct from the mark 'UNO-VAC,' because the few ads and sales of bottles without the mark UNO-VAC on them do not establish secondary meaning in the bottle.
 
 
 8
 We construe that to mean that the evidence presented to prove secondary meaning in this case was insufficient and, hence, direct evidence such as a proper survey would be needed. That is not to say that proper survey evidence, or other direct evidence, is always required.
 
 
 9
 Union argues that it presented evidence of actual confusion that is highly probative of secondary meaning in this case.[1] It presented five instances of misdirected letters or returned bottles sent to Union instead of to the true, foreign manufacturers. The Commission, however, did not deem the five instances of returns/letters to be enough evidence of confusion to warrant a finding of secondary meaning. We cannot fault the Commission in that regard. Even assuming that the returns indicated confusion,[2] there were only five instances of such confusion. In an industry where Union has sold over 4 million bottles since 1965, we cannot fault the Commission for deciding that Union's presentation of five returns in the circumstances of this case did not establish secondary meaning.
 
 
 10
 Union correctly argues that the Commission opinion never discussed the five instances of misdirected returns. From that, Union concludes that the Commission never considered that evidence. However, "[m]erely because a decision does not mention a particular point 'forms no basis for an assumption that it did not consider those elements.' " Perkin Elmer Corp. v. Computervision Corp., 732 F.2d 888, 901, 221 USPQ 669, 679 (Fed.Cir.), cert. denied, 469 U.S. 857 (1984). See also Medtronic, Inc. v. Daig Corp., 789 F.2d 903, 906, 229 USPQ 664, 667 (Fed.Cir.), cert. denied, 107 S.Ct. 402 (1986) ("We presume that a fact finder reviews all the evidence presented unless he explicitly expresses otherwise."). Moreover, even if the Commission did not consider the five instances of alleged confusion, any error would have been harmless. Showing five instances of actual confusion in the circumstances of this case pales in comparison to the large number of bottles sold each year in the industry.
 
 
 11
 Regarding Union's petition for reconsideration and rehearing, the pertinent Commission rule allows such a petition only for "new questions raised by the determination or action ordered to be taken thereunder and upon which the petitioner had no opportunity to submit arguments." 19 C.F.R. Sec. 210.57. Union argued in its petition that the Commission (1) erred by dissecting Union's design trademark in determining distinctiveness, and (2) improperly ignored relevant record evidence in concluding lack of identity of the bottle design with Union. The Commission denied the petition because "it does not raise a new question for which Union had no opportunity to submit arguments when the case was before the presiding officer and the Commission." We discern no abuse of discretion in the Commission's application of the rule.
 
 
 12
 Regarding Union's motion for relief, that was based on newly discovered evidence, i.e., 35 bottles returned to Union (none with the UNO-VAC label) that were made by other manufacturers. The Commission denied the Motion under what it perceived to be the applicable rule, 19 C.F.R. Sec. 211.57. The Commission acknowledged that Union was seeking relief from a "final action," as required by that rule, but declared that:
 
 
 13
 "final action" in the context of rule 211.57 must be interpreted to refer to an affirmative final action, that is to the issuance of an exclusion order or to cease and desist orders, which can be "modified" or "set aside." Since an exclusion order or cease and desist orders have not been issued in this investigation, Union's motion cannot be considered pursuant to rule 211.57. [Emphasis in original.]
 
 
 14
 We do not view the Commission's treatment of the motion to be an abuse of discretion--especially in light of an alternative procedure the Commission suggested to Union:
 
 
 15
 If the new evidence submitted by Union were of such a nature as to warrant further action, it could seek to institute a new investigation based on the newly discovered evidence, or the Commission could institute a new investigation on its own motion. In either case, the Commission could conduct an expedited investigation by incorporating the record of the prior investigation, and instructing the ALJ to consider the new evidence, and issue an initial determination.
 
 
 16
 Indeed, that suggestion still seems to be open to Union. In light of an apparently increasing number of returned bottles continually being sent to Union, the Commission states in its appeal brief that its earlier decision "was without prejudice" and that Union can file a new complaint should it have sufficient evidence to justify a new investigation.
 
 
 17
 Union has already requested a new investigation, but that was denied. In a new complaint, Union presented evidence of 80 imported bottles mistakenly returned to Union. The Commission did not deem that evidence to be "sufficient proof that a substantial number of the buyer group identify the mark with a single source." "At most," said the Commission, the 80 returns were "evidence that 80 people associate the design of the vacuum bottle with Union." There is no error in that. How we would perceive the 80 returns if we were the Commission, and whether we would have instituted a new investigation, are not the questions. We review the Commission's determination under an appellate standard of review, and, applying that standard, Union has not persuaded us that the Commission decision should be vacated or reversed.[3]
 
 
 18
 Union argues that use of "shall" in the first sentence of 19 U.S.C. Sec. 1337(b)(1) requires the Commission to investigate fully all complaints filed and, hence, a decision not to investigate fully is never appropriate. The Commission, on the other hand, argues that the decision to investigate fully is a discretionary one. The Commission cites its rules, legislative history, other parts of the statute, and a CCPA case where dismissal of a complaint without full investigation was held to be appropriate. In that case, Syntex Agribusiness, Inc. v. United States Int'l Trade Comm'n, 659 F.2d 1038 (CCPA 1981), the Commission dismissed the complaint, and this court denied a petition for writ of mandamus, because the complaint allegations could not support the charges therein. The present case is similar to Syntex insofar as the complaint was dismissed because of an insufficiency of allegations. Specifically, allegations of 80 returns here were determined not to be enough to change the Commission's earlier conclusion--made after a complete investigation--that there was no Sec. 1337 violation. Given those unique circumstances, the Commission has convinced us--at least in this case--that it had discretion on whether to institute a second full investigation.
 
 
 19
 Of course, that discretion is not unlimited. At some point, "cumulative evidence," as the Commission refers to it, may accumulate and cross a threshold to become new evidence warranting a second investigation. At what point that threshold would be crossed in this case and, more importantly, at what point the Commission would abuse its discretion by refusing to institute a second full investigation, are questions not now before us. We simply hold there was no abuse of discretion in the ruling before us.
 
 
 
 *
 The Honorable Phillip B. Baldwin assumed Senior Circuit Judge status effective November 25, 1986
 
 
 [1]
 Evidence of actual confusion, though not a requirement, tends to show secondary meaning. American Scientific Chem., Inc. v. American Hosp. Supply Corp., 690 F.2d 791, 793, 216 USPQ 1080, 1082 (9th Cir.1982). See also 1 J. McCarthy, Trademarks and Unfair Competition Sec. 15:3 at 666 (2d ed. 1984)
 
 
 [2]
 The Administrative Law Judge stated that "the misdirected correspondence to Union could have been occasioned by circumstances other than the similarity among the subject bottles." He nevertheless concluded that "this information may be considered as an indication of probable confusion."
 
 
 [3]
 The government argues that the decision not to institute a second investigation is not a final, appealable action, and hence, the decision should be reviewed only under the "clear abuse of discretion" standard applicable to a petition for writ of mandamus. Union argues that the decision is appealable; in that event, an abuse of discretion standard would be appropriate. Under either theory, however, the Commission's decision cannot be overturned