**PREMIER ELECTRONICS LAB, Plaintiff,**

v.

**Don ASTON, Defendant.**

**No. CV 85–3512 DWW.**

United States District Court, C.D. California.

Sept. 10, 1987.

Allen Hyman of Nagler & Schneider, Beverly Hills, Cal., for plaintiff.

Don B. Finkelstein, Los Angeles, Cal., and John E. Halamka of Halamka & Halamka, Torrance, Cal., for defendant.

## MEMORANDUM DECISION

DAVID W. WILLIAMS, Senior District Judge.

Premier Electronics Laboratory, Inc. ("Premier") is a Connecticut corporation which is the successor in interest to certain corporate predecessors. The complaint alleges that since as early as 1968 plaintiff and its predecessors have produced, sold and distributed throughout the United States sound recordings of old radio programs under the trademark "Radio Yesteryear," which was duly registered in the U.S. Patent and Trademark Office.

Plaintiff alleges that beginning about 1974 or earlier the defendant, Donald L. Aston, d.b.a. Aston's Adventures ("Aston"), undertook to advertise and sell competing sound recordings from old radio programs using the terms "Yesterday's Radio" and "Yesterday's Radio on Tape." Both plaintiff and defendant are collectors of reproductions of old radio programs which were nationally popular as long as 30 years ago. Examples of these programs

are: "The Myrt and Marge Show," "Amos and Andy," "The Lone Ranger," "Sherlock Holmes," "The Great Gildersleeve," and "Mercury Theatre of the Air."

Each of the parties has for some years prepared catalogs of their program listings and each has advertised its services in special-interest type magazines which focus their circulation on collectors and hobbyists. This lawsuit is the consequence of plaintiff's insistence that the use by defendant of the phrase "Yesterday's Radio" infringes upon plaintiff's registered mark. Plaintiff uses a distinctive lettering style in its advertising called "Broadway type" and it further alleges that defendant's adoption of a strikingly similar type in its ads is indicative of defendant's intent to confuse the public as to the source of the product, all in violation of the Lanham Act (15 U.S. C. Sec. 1114).

## Discussion

In *San Francisco Arts & Athletics v. U.S.O.C.*, 483 U.S. ——, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987), our highest court has given new support to the need for protection of trademarks under the Lanham Act. It has recognized that "[n]ational protection of trademarks is desirable ... because trademarks foster competition and the maintenance of quality by securing to the producer the benefits of good reputation." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). In the Lanham Act, 15 U.S.C. Sec. 1051 et seq., Congress established a system for protecting such trademarks. Section 45 of the Lanham Act defines a trademark as "any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify and distinguish his goods, including a unique product, from those manufactured or sold by others." 15 U.S.C. Sec. 1127 (1982 Ed., Supp. III). The owner of a trademark is protected from unauthorized uses, under the Lanham Act, that are "likely to cause confusion, or to cause mistake,

or to deceive." *San Francisco Arts & Athletics v. U.S.O.C., supra.*[1]

However, it has never been Congressional intent that the Lanham Act should give exclusivity of use for common words or phrases that have no protectable value.[2] This Court is told that as a condition of Premier obtaining its trademark registration, the word "radio" was disclaimed as not protectable. Even registering to plaintiff the word "Yesteryear" seems suspect because the term is merely descriptive and refers only to things of the past having a sentimental value,[3] and the Lanham Act is carefully crafted to prevent commercial monopolization of language that otherwise belongs in the public domain. The Supreme Court has cautioned against other than a narrow scope of protection of trademarks saying, "this Court has recognized that words are not always fungible, and that the suppression of particular words 'run[s]' a substantial risk of suppressing ideas in the process.'" *San Francisco Arts & Athletics v. U.S.O.C., supra* — U.S. at —, 107 S.Ct. at 2978, 97 L.Ed.2d at 445.

At the outset, it is interesting to note that plaintiff does not contend that it "manufactured" any goods, but that its trademark has come to be identified by the general public with "goods and services" emanating from or sponsored or authorized by it, or affiliated with plaintiff and its predecessor. This Court must make a determination from the evidence whether defendant's use in the sale of its product of the phrase "Yesterday's Radio" in reference to its distribution of reproductions of old radio programs infringes upon the plaintiffs registered mark. It is also noted that there is a difference between the terms "Yesteryear's" and "Yesterday's" although both invite a mental journey into the recent past.

Trademark Terms

Defendant contends that it has not infringed upon plaintiff's registered mark because the word "Yesteryear" is a generic term which has no protectable value. Words in common use are said to be the common property of all people and no one can acquire the right to them by adopting them as his trademark. No exclusive right can be acquired in a trademark composed of words which, according to their primary meaning, may with equal truth and right be employed by others for the same purpose.

Generic and descriptive words are used to identify and describe goods and services, whereas the primary office of a trademark is to identify the *source* of those goods and services.[4]

Genericness is analyzed by asking whether a term has come to be understood as referring to the genus of which a particular product is a species. Generic terms may never attain trademark protection. *Transgo, Inc. v. AJAC Transmission Parts Corp.*, 768 F.2d 1001 (9th Cir.1985), cert. den. 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778; Lanham Trademark Act, Sec. 2(f), 15 U.S.C. Sec. 1052(f).

A generic term is incapable of designating the source of a product and may never be protected as a trademark. *Gimix, Inc.*

---

1. Section 1114 of the Lanham Act says in part:
   (1.) Any person who shall, without the consent of the registrant
   (a) use in commerce any reproduction, counterfeit, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ... "shall be liable by the registrant for the remedies hereinafter provided."

2. *See* 15 U.S.C. Sec. 1052(e)(1) and Sec. 1064(c); *Transgo, Inc. v. AJAC Transmission Parts Corp.*, 768 F.2d 1001 (9th Cir.1985); *Bada Company v. Montgomery Ward & Co.*, 426 F.2d 8 (9th Cir.

1970); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2nd Cir.1978).

3. The disputed phrases in this case seem to have wide local usage. A perusal of the Los Angeles telephone directory shows the following business listings: "Yesterday's Restaurant"; "Yesterday's Treasures"; "Yesteryear, Ltd."; "Yester-Year Auto Repair"; "Yester-Year Auto"; "Yesterday's Dream"; "Yesterday's Cocktail Lounge", "Yesterday's Stuff"; and "Yesterday Once More, Ltd."

4. *See* Treece and Stephenson, "Another Look at Descriptive and Generic Terms in American Trademark Law," 29 Sw.L.J. 547 (1975); 66 Trademark Rep. 452 (1976).

v. *JS & A Group, Inc.*, 699 F.2d 901 (7th Cir.1983). To allow a producer of goods to usurp a generic term as a protectable trademark would prevent competitors from describing their own goods adequately. *Miller Brewing Co. v. Falstaff Corp.*, 655 F.2d 5 (1st Cir.1981); *Technical Publishing Co. v. Lebhar–Friedman, Inc.*, 729 F.2d 1136, 1139 (7th Cir.1984).[5]

■ The typical generic term is a noun, a common term used to designate (name) a product or service without regard to the identity of the seller. A generic term categorizes. It conveys information with respect to the nature or class of an article. The typical descriptive term is an adjective, and it categorizes, also. It identifies the characteristics and qualities of the article, such as its color, odor, functions, dimensions or ingredients.[6] The terms being contested in the instant case, "yesteryear" and "yesterday," are being used by both parties to describe the recordings, that is, to assign them to a particular era, and to give the public greater knowledge of the product (and its capacity). Both terms are descriptive.

## Descriptiveness

Words, phrases, signs, pictures and other marks which refer to any feature of the product or service—its peculiarities, appearance, fragrance, character or quality, its effect or purpose, are likely to be held descriptive.

A 'descriptive mark' is bad for two reasons: First, because it does not in fact advise the public that the goods come from a 'single source' ... second, because, if it did, since the word describes the goods, the protection of the mark would trench upon common speech which should do the same. 3 Callman: Competition, Trademarks and Monopolies, Sec. 18.03.4

Everyone has an equal right to produce and sell similar articles to those being sold by his peers. Similarly, each individual has the right to describe them properly and to use any appropriate language or words for that purpose. Whether the words employed fall within this prohibition, it is said that the true test is not whether they are exhaustively descriptive of the article designated, but whether in themselves, and as they are commonly used by those who understand their meaning, they are reasonably indicative and descriptive of the thing intended. 74 Am.Jur.2d Sec. 50.

■ The descriptiveness of a designation must be determined not in the abstract, but in relation to the goods to which it relates and the context in which it is used.[7] If a considerable portion of the purchasing public considers the word descriptive, then it is so, and it is immaterial whether others use that term or other words to describe the same thing. 3 Callman Sec. 18.03.

## Secondary Meaning

■ Descriptive terms may become valid marks by acquiring secondary meaning in the minds of the consuming public. Lanham Trademark Act, Sec. 2(f), 15 U.S.C. Sec. 1052(f). To establish that a descriptive term has a secondary meaning, plaintiff must show that the primary significance of the term in the minds of the consuming public is not the product but the producer. *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938). Secondary meaning is achieved by an association between a name and a source. When this mental recognition occurs among purchasers, the name becomes legally protectable as an identification symbol. *American Scientific Chemical, Inc.*

**5.** Cf. The term "Auto Page" is not a generic term. *Gimix, Inc. v. JS & A Group, Inc., supra* at 905. The mark "SEATS" held not generic when registered as a service mark for a ticket reservation company. *In re Seats, Inc.*, 757 F.2d 274 (1985). Held, however, that it was generic as to chairs or bleachers (dicta).

**6.** For example, "automobile" is a generic term because it applies equally well to any brand of automobile. In the phrase "blue automobile", the term "blue" is descriptive because it attributes a color to the automobile.

**7.** *Norsan Products, Inc. v. R.F. Schuele Corp.*, 286 F.Supp. 12 (E.D.Wis.1968); *In re Colgate Palmolive Co.*, 406 F.2d 1385 (CCPA 1969).

*v. American Hospital Supply Corp.*, 690 F.2d 791 (9th Cir.1982).

■ Plaintiff's generic phrase cannot be saved because the term indicates source to the public (i.e., it is distinctive in fact). The mark "Rolls–Royce" identifies a particular type of high quality, expensive automobile and also indicates the source of that automobile. However, the source of manufacture is not always the accepted characteristic giving value to the mark. The consumer might rely on the mark as assuring the same level of quality as the product he purchased earlier. 1 Gibson, Trademark Protection and Practice, Section 1.03.[1] A trademark must identify the product or service of a particular manufacturer or merchants and distinguish it from those of others, thereby designating its source or origin. 15 U.S.C. Sec. 1127, 1 Gibson, 2.01.

Secondary meaning contemplates that a word or phrase is originally, and in that sense, primarily incapable of exclusive appropriation in reference to an article in the market, because geographically or otherwise descriptive, might nevertheless have been used so long and so exclusively by one producer with reference to his article that, in the trade and to the branch of the purchasing public, the word or phrase has come to mean that the article was his product; in other words, had come to be, to them, his trademark. *Norm Thompson Outfitters, Inc. v. General Motors Corp.*, 448 F.2d 1293, 1296 (9th Cir.1971). Such is not the case in the instant action.

### Conclusion

I must conclude from a consideration of all of the evidence that defendant has not infringed the mark of plaintiff by its use of a similar but not exact phrase describing a vintage product. While intent is not a component of a finding of infringement, there is credible evidence that Aston commenced utilization of its phrases and made sales thereunder as early as 1973 and that at that time Aston had no knowledge of the use by plaintiff of the mark "Radio Yesteryear". Premier's registration was issued on September 24, 1974. It is quite clear that he simply chose a common, descriptive

term to describe a product that is similar to plaintiff's.

Plaintiff's claims of infringement and unfair competition are without evidentiary or legal support and cannot be sustained. Likewise defendant's counterclaims for cancellation of the mark and for unfair competition are without merit and are dismissed.

Judgment is ordered for defendant Aston on the complaint and defendant is directed to prepare proposed findings of fact and conclusions of law and lodge same not later than October 2, 1987.

IT IS SO ORDERED.