NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DEC 20 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DANIEL E. DAVIS; PETER
CONTI; GRINGO HOLDINGS, LLC,

        Plaintiffs - Appellants,

  v.

BLUE TONGUE FILMS; DENVER AND
DELILAH PRODUCTIONS; A. J.
DIX; NASH EDGERTON; EROS
INTERNATIONAL MEDIA LTD.; TRISH
HOFFMAN; BETH KONO; MATTHEW
STONE; ANTHONY
TAMBAKIS; CHARLIZE
THERON; REBECCA YELDHAM,

        Defendants - Appellees.

No. 23-3968

D.C. No.
2:21-cv-02090-JVS-JDE

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted December 4, 2024
Pasadena, California

Before: BYBEE, IKUTA, and BADE, Circuit Judges.
Dissent by Judge IKUTA.

---

    \*    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Plaintiff-Appellants Daniel E. Davis, Peter Conti, and Gringo Holdings, LLC (collectively, Authors) appeal the district court's order dismissing their second amended complaint (SAC) with prejudice. We have jurisdiction under 28 U.S.C. § 1291. *See Iten v. County of Los Angeles*, 81 F.4th 979, 983 (9th Cir. 2023). We reverse and remand for further proceedings consistent with this disposition.

We review de novo the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6), taking "all well-pleaded factual allegations in the complaint as true" and "construing them in the light most favorable to the nonmoving party." *Abcarian v. Levine*, 972 F.3d 1019, 1022 (9th Cir. 2020) (internal quotation marks omitted) (quoting *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018)). The SAC alleges that Authors published a book in 2016 entitled "Gringo" (the Book), which details Davis's experiences as an American fugitive who fled to Mexico to escape prosecution for drug charges after being "set-up by a 'friend.'" In 2018, Defendant-Appellees[1] (Filmmakers) released a movie, also entitled "Gringo" (the Movie), about an American pharmaceutical company employee who travels to Mexico on business and, while there, fakes his own kidnapping after learning the

[1] Defendant-Appellees are Blue Tongue Films, Denver and Delilah Productions, A.J. Dix, Nash Edgerton, EROS International Media Ltd., Trish Hoffman, Beth Kono, Mathew Stone, Anthony Tambakis, Charlize Theron, and Rebecca Yeldham.

23-3968

company is selling pharmaceuticals to a cartel. Based on the works' titles, Authors sued Filmmakers for trademark infringement in violation of the Lanham Act and unfair competition in violation of California Business and Professions Code § 17200.

1. In reviewing a dismissal under Rule 12(b)(6), we may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Abcarian*, 972 F.3d at 1022 (quoting *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008)). We consider physical copies of the Book and the Movie under the incorporation-by-reference doctrine. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002–03 (9th Cir. 2018). We decline to take judicial notice of the existence of other creative works entitled "Gringo" based on the screenshots of Amazon.com webpages submitted by Filmmakers.[2] *See id.* at 999–1000 (distinguishing between judicial notice of the existence of a document and judicial notice of the facts the document establishes).

2. To prevail on a Lanham Act trademark infringement claim, Authors must show they have "a valid, protectable trademark." *Applied Info. Scis. Corp. v.*

---

[2] We assume without deciding that Filmmakers properly framed their request for judicial notice as a new request, instead of an argument that the district court abused its discretion in declining to notice these webpages. *Khoja*, 899 F.3d at 998 (a district court's "decision to take judicial notice and/or incorporate documents by reference is reviewed for an abuse of discretion").

23-3968

*eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). Assuming without deciding that the "Gringo" title (which is not federally registered) is a descriptive mark,[3] the SAC plausibly alleges that the title has acquired a secondary meaning in the market and is thus protectable. *See id.* at 969–70; *see also Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 873 (9th Cir. 2002) ("Secondary meaning is a question of fact . . . ."). Specifically, the SAC alleges that the Book quickly became "an Amazon #1 Bestseller" after its publication in 2016, has been "widely recognized with favorable reviews" in major news publications, and is so popular that Davis is "regularly recognized in public." The SAC further alleges that Davis traveled "worldwide" to promote the Book and that the Movie's use of "Gringo" has created "widespread confusion" among customers, who mistakenly associate the Movie with the Book. *Japan Telecom*, 287 F.3d at 873–75 (evidence of secondary meaning may include advertising efforts and the length and manner of the alleged trademark's use); *Am. Sci. Chem., Inc. v. Am. Hosp. Supply Corp.*, 690 F.2d 791, 793 (9th Cir. 1982) (consumer confusion is "an indicium of secondary meaning"). It also alleges that Filmmakers changed the Movie's title from "American Express" to "Gringo" after the Book's commercial success on

---

[3] We do not decide whether (and under what circumstances) the title of a single book could be an inherently distinctive mark that is protectable without a showing of secondary meaning. *See* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 10:2 (5th ed. 2024).

Amazon.com to falsely suggest the two works are associated and chose a similar typeface as the Book's title to bolster this assumption. *See P & P Imps. LLC v. Johnson Enters., LLC*, 46 F.4th 953, 961 (9th Cir. 2022) (evidence of copying "strongly supports an inference of secondary meaning" (quoting *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989))). These allegations support a plausible inference that actual and potential buyers recognize works connected with the "Gringo" title as "associated with the same source." *Japan Telecom*, 287 F.3d at 873 (quoting *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 911 (9th Cir. 1995)).

3.      The *Rogers* test does not apply at this stage in the proceedings because the SAC plausibly alleges that the Movie uses "Gringo" as a source identifier. *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 153 (2023) (holding that the *Rogers* test does not apply when the alleged infringer uses the mark "as a designation of source for the infringer's own goods"); *see Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989). The SAC's allegations that Filmmakers chose the titular mark "Gringo" to suggest an association between the Book and Movie, displayed the mark in similar ways, and distributed the Movie through the same commercial platform support a plausible inference that Filmmakers used the "Gringo" title to identify the source of the Movie. We reject Filmmakers' arguments that this case is like *Mattel, Inc. v. MCA Records, Inc.*, 296

F.3d 894 (9th Cir. 2002), because the SAC alleges that Filmmakers used "Gringo" not merely to convey a message about the Movie's plot but also to garner attention by "exploiting the goodwill, public recognition and commercial success enjoyed by the Book," *see id.* at 901.

4.      To state a claim for trademark infringement under the Lanham Act, the plaintiff must plead facts supporting an inference that "a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1027 (9th Cir. 2024) (internal quotation marks omitted) (quoting *Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998)); *see also Jack Daniel's*, 599 U.S. at 156.  To determine whether a consumer is likely to be confused, we weigh the eight *Sleekcraft* factors.  *Punchbowl*, 90 F.4th at 1027; *see also Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011) ("The *Sleekcraft* factors are . . . not a rote checklist.").[4] Because the inquiry is "open-ended," we have cautioned that summary judgment rulings based on the *Sleekcraft* factors should be granted "sparingly, as careful

---

[4] The *Sleekcraft* factors are: "(1) strength of the mark; (2) [relatedness] of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." *Punchbowl*, 90 F.4th at 1027 (quoting *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)).

assessment of the pertinent factors that go into determining likelihood of confusion usually requires a full record." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1210 (9th Cir. 2012) (quoting *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901–02 (9th Cir. 2002)). This concern is even more pronounced at the pleadings stage. *See* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:121.50 (5th ed. 2024) ("[G]rants of motions to dismiss are the exception, not the rule."). But "[i]f the court determines as a matter of law from the pleadings that the goods are unrelated and confusion is unlikely, the complaint should be dismissed." *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 860 (9th Cir. 1996), *as amended* (Aug. 6, 1996).

Taking the allegations in the SAC as true, the "Gringo" titles are not so dissimilar as to preclude *as a matter of law* "any plausible likelihood of confusion." *Jack Daniel's*, 599 U.S. at 157 n.2. The SAC plausibly alleges that the Book's "Gringo" title has some amount of commercial strength, that the marks are similar in appearance and identical in sound and meaning, that the Book and Movie are related goods, and that Filmmakers chose "Gringo" as the Movie's title knowing it would cause consumers to associate the two. *See Entrepreneur Media Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002) ("When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived."

(quoting *Sleekcraft*, 599 F.2d at 354)); *cf. Murray*, 86 F.3d at 859, 861 (concluding that a market research business operating under the name "America Speaks" and a cable television network entitled "America's Talking" were unrelated as a matter of law). We therefore reverse the district court's dismissal of Authors' Lanham Act claim.

5. For the same reason, we reverse the dismissal of Authors' claim for unfair competition in violation of California Business and Professions Code § 17200, which is "substantially congruent" to their Lanham Act claim. *Cleary v. News Corp.*, 30 F.3d 1255, 1262 (9th Cir. 1994) (quoting *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991)) (collecting cases); *see also Entrepreneur Media*, 279 F.3d at 1153 (reversing and remanding grant of summary judgment on both a trademark infringement claim and a § 17200 unfair competition claim based on disputed issues of fact as to some of the *Sleekcraft* factors).

**REVERSED** and **REMANDED.**

*Davis v. Blue Tongue Films*, No. 23-3968
Ikuta, J., dissenting

The word "gringo" is a well-known pejorative for English-speaking Anglo-Americans. It most strongly suggests an insult. Here, Davis's second amended complaint does not plausibly allege that the word "Gringo" used as a book title has acquired secondary meaning.

A mark acquires secondary meaning in the minds of consumers when it distinguishes the source of goods. *See Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 873 (9th Cir. 2002). Taking the second amended complaint's allegations as true, Davis does not plausibly allege that consumers associate the derogatory term "Gringo" with the source of his book.

The second amended complaint alleges that the book is an Amazon bestseller, has favorable reviews, and that Davis is recognized in public. These allegations could apply to numerous books and products sold by Amazon, and are insufficient to suggest that consumers associate the word "Gringo" with a particular source. The complaint also alleges that the film title has generated widespread confusion, but this is a bare legal conclusion we should disregard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). And Davis's allegation that the Filmmakers changed the title to piggy-back on the success of Davis's book is implausible, given the more likely conclusion that the Filmmakers considered

1

"Gringo" a more appealing title than "American Express," which signifies a credit card.  *Id.* at 681.

Because I would affirm the district court on the ground that Davis has not plausibly alleged that the term "Gringo" has acquired second meaning, I respectfully dissent.